PHILADELPHIA, B. & W. R. CO. v. STATE OF MARYLAND, to Use of PANTLEY et al.

(Circuit Court of Appeals, Fourth Circuit. January 7, 1919.)

No. 1642.

RAILROADS ☞307(6)—ACCIDENT AT CROSSING—NEGLIGENCE OF WATCHMAN.

On the question of negligence of a watchman at a railroad crossing over four tracks in inviting three automobiles, following each other, to cross, one of which was struck by a train, the court *held* to have properly instructed that it was his duty to allow all time to cross at ordinary speed "with a fairly clear margin of safety."

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action by the State of Maryland, to the use of John C. Pantley and Amelia H. Pantley, against the Philadelphia, Baltimore & Washington Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Shirley Carter, of Baltimore, Md. (Bernard Carter & Sons, of Baltimore, Md., on the brief), for plaintiff in error.

Raymond S. Williams and Arthur W. Machen, Jr., both of Baltimore, Md., for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and McDOWELL, District Judge.

KNAPP, Circuit Judge. This suit grows out of a grade crossing accident in which William C. Pantley lost his life. The undisputed facts appear to be these: At Severn, Md., the tracks of plaintiff in error, hereinafter called defendant, run north and south, and are crossed by a highway running east and west. This highway connects Camp Meade with the city of Baltimore, and is much traveled by automobiles and other vehicles. There are four tracks at the crossing, of which the most easterly is for north-bound, and the next easterly for south-bound, passenger trains. The distance from the most eastern to the most western rail is 37 feet; the driveway over the tracks is 14 feet in width. The entire crossing is practically level and slightly above the adjacent highway, which is graded up to it on either side.

The accident occurred on the 13th day of October, 1917, about half after 7 in the evening. Three automobiles going east came to the westerly side of the crossing. The second had become disabled, and the first was towing it by a steel cable some 7 feet in length; the third, in which Pantley was riding, closely followed the second. The colored watchman on duty signaled them to proceed, and they started over the tracks. A moment later, and while they were on the crossing, a north-bound passenger train running at high speed was seen to be almost upon them. Some one called out to them to "jump," or gave a similar warning, and the occupants of the machines leaped to the ground, Pantley among the rest. In his fright and bewilderment he ran forward directly in front of the train and was instantly killed. The first automobile was all the way over and escaped; the second was right on the track, and hit by the locomotive; the third, a little further to the west, was not touched. If Pantley had remained in his seat, or run backward, he would have been in a place of safety.

Within this outline of substantial agreement there is sharp dispute as to what actually happened. The plaintiffs claim in substance that the automobile came to a stop on reaching the crossing; that the watchman, not only waved his lantern for them to go ahead, but called to them to do so; that this was assurance of ample time to cross the tracks without any danger; that the machines accordingly started on in the order named, the first in low gear and going at slow speed over the rails; that presently, and when this car was a little more than half way across, the watchman cried out to "hurry up"; that a moment after the train in question, which had come round a curve less than 600 feet distant, was shown by the headlight to be rapidly approaching; that it was then too late to avoid the collision; and that, in short, the defendant is liable because the watchman invited the automobiles to cross when he knew, or ought to have known, that a fast train, already overdue, was about to pass at great speed. Against this

the defendant says that the three machines had abundant time to get across the tracks without the slightest risk; that the interval between the watchman's signal to go on and the arrival of the train at the crossing was sufficient for an automobile to pass over it some seven times, even at the slow rate of 4 miles an hour, and that the testimony so demonstrates; that the accident happened solely because the first car for some reason stopped on the track, holding up those behind it, for at least 30 seconds, or several times as long as it would take an automobile to go from one side of the crossing to the other; that the watchman had the right to assume that the machines would get over all the tracks in the usual time; that he could not anticipate, and was not bound to anticipate, the stoppage which actually occurred, or any stoppage at all; and that, in a word, there was no negligence or faulty judgment or failure of duty on his part.

It needs no argument to show that the opposing proofs thus summarized made a case for the jury; and the defendant apparently so concedes, as no motion was made for a directed verdict and no assignment of error challenges the submission. In the court below there was a plea to the jurisdiction, to which the plaintiffs demurred; the demurrer was sustained, and error is assigned; but the contention has not been made in this court, either in brief or oral argument, and may properly be deemed abandoned.

Exception was noted to the judge's charge as a whole, which defendant says was unfair, partisan, and calculated to create prejudice in the minds of the jurors; and there is a corresponding assignment of error. It would be sufficient to observe, as has often been held, that such an assignment brings up nothing for review and should be disregarded; but we take occasion to add that careful examination of the charge delivered, and of the comments of the court in passing upon some 27 exceptions filed by defendant's counsel, discloses no basis for the objection here considered. The accusation of partiality is wholly unwarranted.

The remaining assignments of error, raising the only reviewable questions of record, relate to certain requested instructions, five in number, which the trial court rejected. As they all present the same proposition in different forms, the quotation of one will suffice:

"The court instructs the jury that they must find their verdict for the defendant in this case, if they find from the evidence that young Pantley's death was the consequence of the second automobile, mentioned in the evidence, stopping on the north-bound or fourth track mentioned in the evidence, provided they find from the evidence that, after the watchman signaled the automobile to come over the crossing, all three automobiles, going at ordinary speed, had time to get entirely over the crossing before the arrival of the train."

What the judge charged in the first instance was this:

"If the watchman invited these trucks to go upon the tracks when there was not sufficient time for vehicles of the kind, moving over eight lines of rails, to make a trip with absolute and entire safety, then the defendant would be liable; for in that case, if there was danger, the watchman invited the autos into the danger. On the other hand, if, at the time the watchman gave them the signal and a verbal invitation to cross, there was ample time for the cars to have crossed the tracks and be clear of any pos-

sible danger before the train arrived, and the accident happened solely because the automobiles stopped on the tracks by reason of some lack of power or some other condition, and that stoppage lasted long enough, not only to consume all the margin of safety which a reasonably prudent watchman would have allowed the trucks to leave the tracks when the train arrived, but to detain them on the tracks until the train came, then the watchman was not at fault, and the accident was not the result of his negligence."

And later, in passing upon the exceptions to the original charge, the following was said:

"The other exception raises substantially the point of your prayers, as I understand it. It raises the question of whether, if the watchman gave them the signal to cross at a time when, if the cars had moved with ordinary speed, every one of them would have cleared the tracks, the defendant cannot be liable. On that. question, gentlemen, it is for you to say whether or not he did. As I have stated, in view of all the circumstances, did he act as a prudent man would have done in calling those cars to go on the track at the time he did call them? If the train was then so far off, if what he did was the act of a reasonable and prudent man, in that the cars moving over could have had a chance to get over the tracks had they moved properly, could have cleared the tracks with a fairly clear margin of safety, so he was not taking any unreasonable chances, the railroad is not liable. On the other hand, if he cut the margin too close in your judgment, looking at all the facts and circumstances, so that you think what he did was not the act of a reasonable and prudent man, the railroad is liable."

We need not dwell upon the difference between these instructions, which speak for themselves, and those that were rejected. In our opinion, the former state correctly the applicable rule of law, while the latter define too narrowly the duty and liability of the defendant. To say nothing else, they apparently exclude the "margin of safety" to which in such cases the highway traveler is entitled; for, as the court below remarked, "the watchman was stationed at the crossing, not for the purpose of letting cars take chances, but to prevent them from doing so."

We find no reversible error, and the judgment will therefore be affirmed.